[No. 211-3.    Division Three.    July 2, 1971.]

LEE E. HOBERT et al., *Appellants*, v. LYLE E. MARQUE et al., *Respondents*.

*Norman S. Johnson,* for appellants.

*W. Kenneth Jones* (of *MacGillivray, Jones, Clarke & Schiffner*), for respondents.

GREEN, J.—Plaintiffs, a group of property owners, instituted this action for a permanent injunction to restrain defendants, Lyle E. and Ruth E. Marque, from erecting, maintaining and operating a commercial dog kennel on their property. From a denial of the injunction, plaintiffs appeal.

All assignments of error revolve around one central issue:

> Can a commercial dog kennel be constructed and operated in an "R1-S"—One-Family Suburban Residential Zone—as defined by the ordinances of the city of Spokane?

The trial court answered affirmatively. We agree.

In 1968 defendants decided to buy some property on which they could construct a commercial dog kennel to be operated by their daughter. They located certain property on South Myrtle Street in Spokane. Before purchasing the property they consulted the assistant planning director for Spokane and verified that the zoning ordinances would permit construction and operation of such a kennel. Relying upon this information, defendants purchased the property in April 1969. About May 1, 1969, some of plaintiffs were verbally informed by defendants they planned to build a commercial dog kennel on the property. On May 5, 1969, they contracted to build the kennel at a cost of about $30,000. The contractor, on behalf of the defendants, submitted plans to the city and obtained a building permit. On June 18 construction commenced.

This action was commenced on August 1, 1969. At that time the building was completed except for landscaping. Upon trial the plaintiffs produced evidence of special damage to their respective properties by way of a reduction in market value due to the construction of the kennel. The property owned by plaintiffs and defendants is in the "R1-S" zone.

The intended primary use and permitted uses in the "R1-S" zone are set forth in section 125.20 of Spokane City

Ordinance No. C15434 adopted in 1958. It reads in pertinent part:

Sec. 125.10 Primary Intended Use

1. The "R1-S" zone is intended primarily to provide for the transition of large, sparsely settled areas from rural or agricultural characteristics to urban one-family residence use and to provide certain areas wherein a partial agricultural atmosphere is retained. It is intended that these aims should be accomplished by permitting farming under specified conditions protecting residential development. To achieve this intent, the regulations in those Sections having the prefix 125, and the supplementary regulations in Article 2 of this ordinance shall apply in the "R1-S" zone.

Sec. 125.20 Permitted Uses

Hereafter in the "R1-S" zone no building, structure, or land shall be used and no building or structure shall be erected, altered, enlarged, or relocated therein which is designed or intended to be used for any use other than the following unless otherwise provided in this Ordinance:

. . .

4. Keeping of livestock (except swine), fowls, rabbits, and/or bees primarily for personal noncommercial use shall be allowed on any lot provided that the lot is occupied by a residence and has a lot area not less than twelve thousand (12,000) square feet if fowls, rabbits or bees are to be kept, and not less than forty thousand (40,000) square feet if livestock is to be kept. *The maintenance of fish hatcheries, kennels, and small animal farms as defined herein shall be allowed on any lot provided that the lot is occupied by a residence and has a lot area not less than forty thousand (40,000) square feet.* The keeping of swine and the killing and dressing of livestock are prohibited.

(Italics ours.)

Plaintiffs contend the term "kennel" as used in section 125.20 was intended to apply only to noncommercial kennels. We disagree. The italicized portion of section 125.20 permits the maintenance of fish hatcheries, kennels and small animal farms "as defined herein" where the lot is occupied by a residence and has an area of not less than 40,000 square feet. In the category of general definitions

contained in the ordinance, a small animal farm is defined as follows:

Sec. 110.020. "Animal Farm, Small"
1. Any lot or premises on which four (4) or more fowls, chinchillas, rabbits, and/or other small animals are kept primarily for breeding and/or commercial purposes.

The term "kennel" is defined:

Sec. 110.120. "Kennel"
1. Any lot or premises on which four (4) or more dogs or cats over four (4) months of age are kept.

The term "fish hatchery" is not defined although as the trial judge commented, "I have never heard of a fish hatchery other than a commercial fish hatchery. . . . I would think the ordinance contemplates fish hatcheries as being commercial." Other provisions of section 125.20 allow farming, gardening, fruit growing, nurseries and the sale of the products raised on the premises; commercial greenhouses are allowed by special permit. It seems clear that commercial activities are not excluded from the "R1-S" zone.

We are unable to agree that because the definition of "kennel" in section 110.120 fails to specify "commercial" kennel, the use of the term "kennel" in section 125.10 should be interpreted to mean "noncommercial" kennel. The only other reference to "kennel" contained in the ordinance is in section 175.20 relating to permitted uses in an "M2" heavy industrial zone, where it states:

28. Kennels, when located not less than three hundred (300) feet from an "R" zone.

and again in section 180.20(1) where the same use is permitted in an "M3" unrestricted industrial zone. Clearly, the uses in the industrial zones are commercial and plaintiffs do not contend otherwise; yet, the ordinance does not refer to commercial kennels as such—only kennels. If plaintiffs' position were carried to its ultimate conclusion, nowhere does the ordinance provide for commercial kennels because the word "commercial" is absent at all points with respect to kennels.

The interpretation of municipal ordinances is gov-

erned by the same rules of construction as state statutes. *Seattle v. Green*, 51 Wn.2d 871, 322 P.2d 842 (1958). One of those rules is that in construing statutes the court must ascertain and give effect to legislative intention. *In re Renton*, 79 Wn.2d 374, 485 P.2d 613 (1971); 8 McQuillin, Municipal Corporations § 25.71 at 187 (3d ed. 1965).

The term "kennel" is broadly defined in section 110.120 as any premises on which four or more dogs or cats over 4 months of age are kept. The definition does not differentiate between commercial and noncommercial. The word "kennel" as used in section 125.20 is unrestrictive and limited only by the definition contained in section 110.120. The absence of restriction precludes the conclusion that a restriction arises by inference. *State v. Roadhs*, 71 Wn.2d 705, 430 P.2d 586 (1967); *Washington Natural Gas Co. v. PUD 1*, 77 Wn.2d 94, 459 P.2d 633 (1969). If the city intended to restrict the operation of kennels in an "R1-S"— One-Family Residential Zone, then the ordinance should have so provided. Given its plain meaning, the ordinance does not restrict the operation of kennels to a noncommercial use. This construction is confirmed by the planning director and his assistant who both testified upon the trial.

There is substantial evidence from which the trial court could find that the ownership of defendants was being developed as a unit, contained in excess of 40,000 square feet and was occupied by a residence. Plaintiffs' contention that since the lot on which the building was constructed did not contain at least 40,000 square feet there was a violation of section 125.20 is without merit. Section 110.130(2) of the ordinance provides that when a tract of land consisting of more than one platted lot is held in one ownership and developed as one unit, all the lots shall be considered as one lot for the purpose of the ordinance.

Judgment affirmed.

MUNSON, C.J., and EVANS, J., concur.

Petition for rehearing denied August 30, 1971.

Review denied by Supreme Court October 5, 1971.